**UNITED STATES of America**
v.
**Michael Anthony MOORE, Defendant.**
**No. 72 Cr. 449.**

United States District Court,
S. D. New York.

Nov. 21, 1972.

**1322**

Whitney North Seymour, Jr., U. S. Atty., New York City, by George E. Wilson, Asst. U. S. Atty., for the Government.

Leavy & Shaw by Edward N. Leavy, New York City, for defendant.

BRIEANT, District Judge.

By indictment filed April 17, 1972, defendant Michael Anthony Moore was charged in two counts with failure to perform a duty required of him under and in execution of the Military Selective Service Act of 1967, 50 U.S.C.App. § 451 et seq.

By Count Two, defendant was charged, on or about the 19th day of November, 1970, up to and including the date of the filing of the indictment, with a failure to report for induction into the Armed Forces of the United States, as directed by an order of his Local Board.

Defendant pleaded not guilty, and waived trial by jury. The cause was tried before me on July 17, 1972. Decision was reserved and defendant continued on bail.

On defendant's June 3rd questionnaire, Form 127 Exhibit 1F, in answer to an inquiry reading "If you have any physical or mental condition which in your opinion will disqualify you for service in the Armed Forces state the condition and submit a physician's statement, if you have one, with this form or submit such a statement at a later date", defendant responded: "Aversion to *political* and military institutions." (Emphasis in original.) He made no further explanation and did not assert that he was a conscientious objector to all wars.

Defense asks that the Court take notice of the fact that in order to obtain a conscientious objector classification and consequent exemption from the draft, defendant would have to fill in Form 150 as provided by the regulations, and that "by applying for conscientious objector status through a Local Board and getting that status granted, another man will be drafted in this person's place, and that is some kind of complicity with the Selective Service System which certain people who are conscientious objectors cannot tolerate" (tr. p. 19).

If this is true, the same objection would seem to apply in the factual circumstances of one who, as this defendant did, applies for a student deferment. The result of applying for a student deferment is indistinguishable, factually and philosophically, from applying for a conscientious objector deferment. In either case, statistically, the effect will be the same, namely, sending someone else in his place.

I find that this defendant, as evidenced by his act in applying for and receiving a student deferment, possesses no such mystique of conscience which prevents him from applying for and accepting a conscientious objector status.

Upon his arrest, defendant informed the federal officer who arrested him

that he did not believe in conscription, and made the additional statement that his philosophical reasons for this belief were not important at that time.

Mrs. Sherrill Moore, defendant's mother, testified, and I find, that defendant "is very much against war . . . feels as though there should be no [national] boundary lines . . . people are the same all over the world." Defendant believes that "he has no reason to kill and is against being drafted into the military because no one has done anything to him or to his mother or to anyone else, and that it is wrong under such circumstances to kill." She stated that these beliefs had been long held by defendant, and that when he was a child in school "he would never fight just for the sake of fighting, get into fist fights. I believe he was brought up to feel that way."

Implicit in these quoted statements of defendant's state of mind, is the conclusion that *if* someone had done something to him, or to his mother or to someone else, there might be a reason to kill. Such a state of mind is that of a "selective" conscientious objector, and not that of a conscientious objector to all wars, as defined in the statute.

Defendant testified, and I find, that he believes that the wilful act of killing is "insane" and that it is "the most negative use of energy ever conceived of". He indicates a philosophical belief that the nation has no power over him, other than those powers which he has given it, and accordingly will under no circumstances "be conscripted into an Armed Force". He says that he never gave the Selective Service System the right, nor would he do so, of "approval of my actions or behavior", and indicated that he feels that "obliging the Selective Service System and its related institutions is hazardous to one's physical and mental health." He further states, "I feel that our county is an abstraction. However, if anyone I love, or have personal contact with were injured and that injury couldn't be undone—I would seek a way to rectify the injustice. I conscientious-

ly object to the fact that all too often the 'state forgets' that it's people who give the state its rights and powers and not the state that gives the people rights. As for the concept of conflict, on whatever level, I, as an individual, will choose, if any, which conflicts I choose to engage and on whatever level." Here again, we find a suggestion that there are or might be conflicts which he would "choose to engage". This is selective conscientious objection.

Defendant, in sum, urges that because of his personal philosophy, deeply held, which might be characterized as a highly individualistic adherence to some sort of personal Social Contract, he lacks sufficient criminal intent to commit the crime as charged. His sole intent was that he did not wish to recognize the authority of the Selective Service System to take "these actions over me" (tr. p. 27).

Defendant testified that he was aware of the fact that Congress has provided that persons can apply to become conscientious objectors, and that he did not apply because (tr. p. 27):

"Well, as far as conscientious objection status goes, I don't believe that conscientious objection is a status. This is something that is basic to human beings and any action, you know, any violent action, is something that is put upon a person. It is not something he would do voluntarily. I don't believe it is a status to be handed down."

He testified further that he did not believe that the Selective Service System has the right to grant him conscientious objector status.

Defendant conceded (tr. p. 35) that the Local Board properly sent out the notice of induction, and that he did receive that notice of induction in due course. The only issue is the validity of his claim that he didn't deem himself required to heed it for questions of conscience. He did understand that he was required by law to appear. Defendant has completed almost two years of college and is an intelligent person.

Defendant's position is that he did not knowingly and wilfully fail to report, but failed to report as a matter of conscience. He made a conscious decision and deliberated upon his course of action before he made a decision not to go.

Defendant admits that he knew long before he received the induction notice that he was not going to report, and was aware that he was not complying with the Selective Service System (tr. p. 38). "I was aware that I wasn't complying with the Selective Service System. Now I don't believe to me that is wrong, because I don't agree with the Selective Service System. Now to them, I am wrong. I mean, I can see where they see that I'm wrong, but I don't agree."

Defendant asks that this Court declare him to be a conscientious objector in that he is opposed to war in any and all forms, so unalterably opposed to war that he cannot participate with the Selective Service System in filling out an application so that he might be declared a conscientious objector because should he do so, another man would be forced to fight in his place. Because of these beliefs, defendant submits that he had no "evil or malicious" intent, and "his participation was, indeed, an intelligent decision and he would wish that others would take that same decision so that the Armed Forces would not continue in the present status, and that there would be some change effected thereby."

■ With respect to the second count, which concerns failure to report for induction, I find defendant guilty as charged. This defendant knowingly and wilfully failed and refused to report for induction. He did so intentionally, and because of a ruggedly individualistic philosophy which indicates to him that he may comply with those rules and regulations of Government which he has consented to or believes in, but need not make himself subservient to the Selective Service System to the extent of filling out its forms and applying for a conscientious objector status.

■ I am convinced that defendant is not in fact a conscientious objector to all wars. At least part of his statement indicates that under circumstances of adequate provocation, he would fight, either individually or in association with others. He is, accordingly, not entitled to exemption on that ground.

Assuming, for purposes of the argument, but without finding, that defendant is in good faith conscientiously opposed to all wars and, had he complied with the Selective Service Regulations, would have been so adjudged by his Local Board, and would have been granted immunity from induction, the question then remains whether any provisions of law or the Constitution extend to immunity from "recogniz[ing] the authority of the Selective Service System to excuse me from such service."

We conclude that defendant's philosophy and his philosophical resistance to complying with the legal procedures necessary to obtain conscientious objector classification (were he entitled thereto) is not constitutionally protected. Those who refuse to register or refuse to cooperate with the Selective Service System to the extent of signing forms, appearing at meetings and applying for classification in an exempt category as a conscientious objector, are not immune from criminal responsibility.

Congress has attempted to establish a just and fair procedure for those conscientiously opposed to war in all forms, to obtain exemption. The procedure cannot be characterized as unreasonable and has been sustained in numerous reported cases. Without a reasonable procedure enacted or authorized by Congress, it would be impossible to administer the right to such exemption, and at the same time fill the ranks of the Armed Services.

Defendant recognizes this, and indeed, part of his purpose in not complying with Selective Service System procedure is to encourage others not to do so.

"Congress, of course, could, entirely consistently with the requirements of the Constitution, eliminate *all* exemptions for conscientious objectors." [*Harlan,* J., concurring in Welsh v.

United States, 398 U.S. 333, 356, 90 S. Ct. 1792, 26 L.Ed.2d 308 (1970) (emphasis in original).]

Congress is competent to prescribe, and delegate to others to prescribe, how exemptions shall be applied for and granted and, specifically, may require all to apply formally to the Board for the exemption, regardless of whether the conscientiousness of their belief also extends to such compliance with procedure. It has done so. Defendant has knowingly and wilfully, although under claim of right, failed to comply with the lawfully imposed requirements of a sovereignty which he recognizes only to the extent he chooses to do so. *Cf.* United States v. Rickenbacker, 309 F.2d 462 (2d Cir. 1962), cert. denied, 371 U.S. 962, 83 S.Ct. 542, 9 L.Ed.2d 509. Nothing more need be said. The requisite intent is present, namely a specific intent not to do that which defendant knew he was required by law to do.

The foregoing constitutes findings pursuant to Rule 23(c), F.R.Crim.P.